IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 14, 2006

## STATE OF TENNESSEE v. REGINALD E. BOST

**Appeal from the Criminal Court for Knox County**
**No. 80005     Richard R. Baumgartner, Judge**

_____

**No. E2006-00661-CCA-R3-CD - Filed January 22, 2007**

_____

The Defendant, Reginald E. Bost, appeals the decision of the Knox County Criminal Court revoking his alternative sentence. In July 2004, the Defendant pled guilty to possession with intent to sell .5 grams or more of cocaine and received an eight-year sentence. This sentence was suspended, and he was placed in the Community Alternative to Prison Program. On April 13, 2005, a warrant was issued, wherein it was alleged that the Defendant violated the conditions of the program. The warrant was later amended to include additional violations. After a hearing, the trial court concluded that the Defendant violated the conditions of his sentence and ordered that his original eight-year sentence to the Department of Correction be reinstated. On appeal, the Defendant argues that the evidence does not support full revocation of his alternative sentence. After a review of the record, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Reginald E. Bost.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; and Randall E. Nichols, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On July 2, 2004, the Defendant was charged by information with possession of .5 grams or more of cocaine with intent to sell. That same day, the Defendant pled guilty as charged and "all pending misdemeanors [were] dismissed[.]" At the guilty plea hearing, the State summarized the facts underlying the conviction as follows:

Your Honor, if called to trial in this matter, we'd call the witnesses listed on the information. The testimony would be [the Defendant], he was stopped on MLK for a traffic violation, and he was found to have in his possession crack cocaine packaged for resale. There was three baggies; the amount being 8.5 grams. It was all packaged for resale. Further testimony would be that all these events took place in Knox County.

Pursuant to the negotiated plea agreement, the Defendant received a sentence of eight years as a Range I, standard offender to be served in the Department of Correction. The sentence was suspended, and the Defendant was placed in the Community Alternative to Prison Program ("CAPP") on November 18, 2004.

On November 23, 2004, a violation warrant was issued, wherein it was alleged that the Defendant had violated the conditions of CAPP by failing (1) to make a full and truthful report to his case manager, (2) to keep curfew, and (3) to report for "supervision/participate in CAPP D[aily] R[eporting] C[enter] activities." On December 2, 2004, the Defendant "submit[ted] to . . . revocation[,]" and the trial court found that the Defendant violated the conditions of the program and revoked his alternative sentence. The Defendant was ordered to serve six months in the Knox County jail, followed by a return to CAPP at the conclusion of his incarceration.

On April 8, 2005, the Defendant was again placed in CAAP. A violation warrant was issued five days later on April 13, 2005, wherein it was alleged that the Defendant again violated the conditions of CAPP by (1) possessing or using alcohol or a controlled substance and (2) failing to make a full and truthful report to his case manager. The warrant was amended on July 28, 2005, to include the following additional violations: (1) failure to obey the laws of the United States and the State of Tennessee; (2) failure to maintain active employment; (3) failure to keep his curfew; (4) failure to pay court costs; (5) failure to perform community service; (6) failure to pay community corrections monthly fees; and (7) failure to report for "supervision/participate in CAPP DRC activities."

An evidentiary hearing was held on March 15, 2006. Robin Williams, the Defendant's CAPP case manager, testified that she was assigned to supervise the Defendant in April of 2005. Ms. Williams testified that the Defendant violated the conditions of CAPP by using alcohol, failing to maintain full-time employment, missing curfews, failing to secure placement in a halfway house as ordered, missing "weekly supervisions[,]" failing to attend "treatment groups[,]" failing to pay fees, and failing perform community service. According to Ms. Williams, on June 27, 2005, the Defendant tested positive for methamphetamine, but this test was not "confirmed." Ms. Williams further testified that, in July of 2005, "we had done a drug screen . . . on him because he smelled of alcohol again, and he was positive that evening for cocaine." Ms. Williams stated that, when the Defendant was informed of his test results, he ran from the building and ceased reporting to her. Because the Defendant ran from the building, Ms. Williams was unable to "send [the test] off . . . ." Also, Ms. Williams testified that, on this occasion, the Defendant failed a "Breathalyzer[.]"

On cross-examination, Ms. Williams stated that the Defendant was required to perform eight hours of community service per month. She testified that the Defendant completed a total of six hours of community service the entire time that he was in the program—April to July of 2005. According to Ms. Williams, in April, the Defendant admitted that he had consumed four wine coolers. Ms. Williams confirmed that the Defendant was unemployed at the time he entered CAPP and that the Defendant worked sporadically while on CAPP—twenty-four hours one month and six hours another. She also opined that, based on the Defendant's sporadic employment, he did not have "a whole lot of money" to pay fees. She testified that the Defendant missed his 9:00 p.m. curfew on April 30, 2005, May 14, 2005, June 22, 2005, June 30, 2005, July 25, 2005, and July 27, 2005. According to Ms. Williams, she phoned the Defendant's residence on these occasions and no one answered the phone. She testified that, on July 27, the Defendant returned her curfew call at 9:38 p.m. and "sounded thick-tongued and said that . . . he didn't use any cocaine."

The Defendant testified on his own behalf. He testified that he "tried" to obtain employment but that he "had to go through a temp service." According to the Defendant, who did not have a GED, he worked several temporary jobs while in CAPP. He stated that he was willing to work in the future. The Defendant testified that he was unable to pay his fees because he had to pay child support and other bills.

Regarding missing curfew calls, the Defendant stated that he was living with his cousin and, if his cousin was on the phone, "she wouldn't click over." He testified that he would call Ms. Williams back and, sometimes, she would not answer his call. He claimed that this happened at least four times. According to the Defendant, "I called her numerous times, and she told me to stop calling her." The Defendant submitted that he was home every time she called and that no one physically came to the residence to see if he was home.

The Defendant acknowledged that he had previously come to court to address the allegation of alcohol use in April of 2005. The Defendant denied that he was "dirty" in July of 2005, meaning that he had not taken illegal drugs. The Defendant asserted that he called "Steps House" but that he did not qualify for placement in this program because he had not failed a drug test.

He also admitted that he had stopped reporting to Ms. Williams by July of 2005. The Defendant stated that he felt that CAPP employees "never gave [him] a chance" and they judged him on his appearance—gold teeth and braids. He stated that he did not call Ms. Williams again because he had a newborn son, who was having trouble in the hospital, and he did not want to go to jail.

The Defendant testified that he could find a new place to live, if required to do so by the court. The Defendant also assured that, if he were returned to CAPP, he would comply with the conditions of the program.

On cross-examination, the Defendant denied that he drank four wine coolers in April of 2005 and stated that he only drank a "slushy drink" that he was uncertain whether contained alcohol. The Defendant contended that he "was doing community service" and that "by May [he] was working"

-3-

for the "temp service" with variable hours.  He testified that he had a total of three children.  The Defendant also stated that he stopped working shortly after July of 2005 because he "thought they were going to come to [his] job and get [him]."

At the conclusion of the proof, the trial court revoked the Defendant's placement in CAPP and remanded him to the Department of Correction, finding as follows:

THE COURT: . . . [The Defendant] is a relatively young man.  I guess, what 21 now?  Just turned 21?

THE DEFENDANT: Right.

THE COURT: But I'm looking at the presentence report[1] here, and his juvenile record starts at age 12 . . . .

The facts in this case are that he was placed on CAPP last fall, in November.  By the 23rd of that month—I think he was placed on, maybe, the 18th?  On the 18th he was placed on CAPP.  By the 23rd of November, that same month, he picked up—I signed a warrant on him for failing to be truthful with his probation officer, failing to keep his curfew, failing to participate in the day reporting center and the other CAPP activities.

We picked him up.  We had a hearing.  He submitted to the violation on December 2nd.  I ordered him to serve six months in custody and told him I was going to place him back on CAPP after that period of time.

What everybody has missed here is that in February we let [the Defendant] go to Centerpointe, and he stayed at Centerpointe for a period of time between February 23rd and March 16th.  And then he was placed back on the CAPP program on the 8th day of April 2005. Five days later, on the 13th of April, I signed a warrant, the allegation being that—that he'd been using alcohol, and again, failing to comply, failing to be truthful and make a full report to his case manager.

We left him on.  We told him to go to a halfway house.  He didn't get in a halfway house.

I don't believe anybody at a halfway house told you you didn't have a problem that required you to be there.

Another thing I had skipped before is that back in November we told him to go to Boot Straps, and he came in and reported he didn't want to go to Boot Straps.

---

[1]The presentence report is not included in the record on appeal.

He'd have his lawyer in court about that. So he never got in a halfway house, despite being told to do that.

I credit the testimony of Ms. Williams that he never kept any full-time employment. He worked on a very sporadic basis. He didn't report on a regular basis. He did very little bit—very little community service, missed six curfews, says he called in. You know, she says on one occasion he called back on the 27th.

He had a positive screen in June, but they didn't test it for methamphetamine. In July that he went in, he was screened. They told him he was positive for cocaine, and he ran out of the CAPP office. Now, let's see. What can we infer from that? That he was clean, and he just—he just decided to run out? I don't think so. I think he was dirty for cocaine. He knew he was dirty for cocaine. He knew he was going to get picked up, go to jail, and he took off. Haven't seen him since. Hasn't reported since last July.

You've earned your right to do your eight years in the state penitentiary . . . .

An order of revocation was entered on March 15, 2006. It is from this order that the Defendant now appeals.

**ANALYSIS**

The Defendant contends that the evidence adduced at the hearing did not support revocation of his sentence. Specifically, the Defendant argues as follows:

In the present case, the evidence was not sufficient to prove that [the D]efendant was not present as required at home during curfew hours, or that his failure to pay fees was willful. The evidence was not sufficient to prove that [the D]efendant's failure to maintain full-time employment was willful or that he had willfully violated the terms of his alternative sentencing other than to have stopped reporting. Given the relatively minor nature of the alleged violations, the trial court should have considered less extreme options than service of a prison sentence.

A trial judge is vested with the discretionary authority to revoke probation if a preponderance of the evidence establishes that a defendant violated the conditions of his or her probation. Tenn. Code Ann. §§ 40-35-310, -311(e); State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001). "The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment." State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991).

When a probation revocation is challenged, the appellate courts have a limited scope of review. This Court will not overturn a trial court's revocation of a defendant's probation absent an abuse of discretion. Shaffer, 45 S.W.3d at 554. For an appellate court to be warranted in finding that a trial judge abused his or her discretion by revoking probation, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." Id.

The evidence contained in the record supports the trial court's findings that the Defendant violated the conditions of CAPP and further supports the trial court's conclusion that CAPP should be revoked. The Defendant admitted that he did not comply with all of the conditions of CAPP, specifically failure to report to his case manager. This failure is not excused by the Defendant's assertion that CAPP employees "never gave [him] a chance" or judged him based upon his appearance.

Moreover, Ms. Williams testified that the Defendant violated the conditions of CAPP by failing to maintain active employment, failing to complete community service, failing to attend treatment groups, and missing curfew. Ms. Williams testified that, in April of 2005, the Defendant, who was underage, drank four wine coolers and that, in July of 2005, the Defendant smelled of alcohol. After the April incident, the Defendant appeared before the court, and the trial court ordered him to go to a halfway house, which the Defendant failed to do. The trial court accredited the testimony of Ms. Williams that the Defendant used alcohol and thus violated the laws of the United States and this State. The credibility of witnesses is to be determined by the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Additionally, there is sufficient evidence in the record to support the conclusion that the lack of any payment of the fees and costs and the failure to maintain employment were choices made by the Defendant, as opposed to circumstances forced upon him. See State v. Perry Eugene Wallace, No. 01C01-9306-CC-00171, 1993 WL 495293, at *3 (Tenn. Crim. App., Nashville, Dec. 2, 1993) (citation omitted).

The record also reveals that the Defendant was fully informed of the requirements of his CAPP sentence and the consequences of failing to meet these requirements. The Defendant has been through at least one prior revocation proceeding and given more than one "second" chance at serving his time under a suspended sentence. Despite repeated attempts by the trial court to rehabilitate the Defendant, the Defendant has consistently failed to meet the requirements of alternative sentencing. Accordingly, we conclude that the trial court neither erred nor abused its discretion in revoking the Defendant's alternative sentence and ordering the remainder of his sentence be served in the Department of Correction. This issue is without merit

**CONCLUSION**

The record reflects that the trial court made a conscientious and intelligent judgment to revoke the Defendant's alternative sentence and order reinstatement of his eight-year sentence in the Department of Correction. The judgment of the Knox County Criminal Court is affirmed.

_____
DAVID H. WELLES, JUDGE